UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA T. CLOUD,<br><br>         Plaintiff,<br><br>   v.<br><br>MEGAN J. BRENNAN,<br><br>         Defendant. | Case No. 19-cv-04638-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

## I.     INTRODUCTION

Plaintiff Erica Cloud, a former employee of the United States Postal Service, claims she was subjected to sexual harassment by managers at the post office where she worked and retaliated against for engaging in certain protected activities.  She asserts two causes of action under Title VII: retaliation (Count I) and sexual harassment and sex discrimination (Count II).  Pending before the Court is Defendant Postmaster General Megan J. Brennan's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 11.  Cloud filed an Opposition (ECF No. 17) and Brennan filed a Reply (ECF No. 18).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the February 6, 2020 hearing.  *See* Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Brennan's motion for the following reasons.

## II.     BACKGROUND

Cloud was employed by the United States Postal Service ("USPS") as a window clerk at the post office located at 201 13th Street, Oakland, CA 94612 (the "Urban Oakland Post Office").

Compl. ¶ 3, ECF No. 1. Yanique Spencer[1] was her direct supervisor. The

supervision/management team at the Urban Oakland Post Office was as follows: Maximo DePaula

and Mr. Mayfield (Acting Managers); Yanique Spencer (Cloud's Direct Supervisor); and Pedro

Flores (Customer service Operations). *Id.* ¶ 13.

Cloud alleges:

> The culture in the Oakland Urban Post Office was one where the
> males in charge sexually harassed and requested sexual favors from
> the female employees, they "wanted" and the female employees that
> capitulated gained favor. Because the male supervisors knew they
> could engage in this sort of behavior without fear of termination—at
> worst they would simply be transferred to a different location— the
> sexual harassment was rampant.

*Id.* ¶ 17. She alleges Mayfield used to ogle her regularly, but he was transferred to a different

USPS location after he was the subject of sexual harassment claims brought by other female

employees. *Id.* ¶ 15. Cloud alleges DePaula also engaged in sexual harassment and had

complaints lodged against him by female employees, but she refused to reciprocate his

inappropriate embraces. *Id.* ¶ 16. Cloud "refused to accept the advances of her male supervisors,

refused to reciprocate unwanted embraces, and [her] husband indicated to a male supervisor that

the supervisor should stop staring at [her] breasts and crotch." *Id.* ¶ 18. As a result, Cloud alleges

she was treated differently than other employees and retaliated against. *Id.*

## A. Yanique Spencer

Cloud alleges she "was bullied and harassed by her direct supervisor, Ms. Spenser–who

did engage in sexual acts with the upper management–because Ms. Spenser was not properly

supervised, even though management knew Ms. Spenser had violent propensities and a history of

on-the-job violent altercations with co-workers." *Id.* ¶ 19. After Cloud was appointed the Shop

Steward of the American Postal Workers Union for the Urban Oakland Post Office, Spencer "used

her unchecked power to harass and bully" her in retaliation for participation in the Union. *Id.* ¶

20. On one occasion, she approached Cloud and her ten-year-old daughter while they were getting

ready to leave and said Cloud needed to "leave the building" and that she was "walking her out."

---

[1] In her complaint and opposition, Cloud alternates between "Spencer" and "Spenser."

*Id.* ¶ 21.  Cloud and her daughter exited the post office and were waiting in the vestibule of the building for their ride, but Spencer screamed that she was to get completely out of the public building.  *Id.*  After they exited the building, Spencer "locked the door so Plaintiff and her daughter could not get shelter inside, gave a wicked smile and walked away."  *Id.*  That same day, Spencer also deleted Cloud's clock rings so her paycheck would be less she earned.  *Id.*

Cloud also alleges Spencer disregarded medical restrictions that required modified duty while she was healing from an injury to her dominant hand.  *Id.* ¶ 22.  Cloud's restrictions, approved by the Postmaster General, placed her on "light duty," meaning she "was not to: lift any object over 5 lbs.; grasp, lift or push objects using her right hand; write or; preform [sic] data entry."  *Id.* ¶ 23.  However, Spencer told Cloud "it was her 'duty' to preform [sic] her full job functions using her injured hand.  When [Cloud] would protest about being required to work outside her medical restrictions, Ms. Spenser would state that she must and yell, 'that's a direct order!'"  *Id.*  Cloud feared she would be fired unless she performed activities that harmed her right hand, and the "failure to allow the hand to heal properly aggravated a serious and substantial injury to her right hand, causing the the [sic] need for surgery and some level of life-long impairment to her dominant hand, severe emotional distress, severe pain and swelling and economic damages."  *Id.* ¶ 24.  The supervisors above Spencer did not prevent this from happening and did nothing to ensure Cloud's medical restrictions were adhered to.  *Id.*

## B.    General Delivery Window

Cloud was assigned to attend to the general delivery window.  *Id.* ¶ 11.  She alleges the "instance of customer outbursts, obvious signs of mental illness and various forms of intoxication among general service postal customers is significantly higher than those customers using other services."  *Id.*  Cloud states "there was an ongoing systematic failure to timely attend to the general delivery mail at the Urban Oakland Post Office due to management's failure to ensure this task was attended to properly."  *Id.* ¶ 25.  "The general delivery customers were frequently agitated, and many of them were yelling and becoming very angry on a regular basis, especially when they were waiting to receive a check, but told it was not available.  This was common knowledge among employees working at the Urban Oakland Post Office."  *Id.*  The window did

not have protective glass, and Cloud "requested on many processions that she be protected in the same way as all of her other permanent assignment co-workers were protected—by simply allowing her to sit at a window that had protective glass installed." *Id.* ¶ 26.

Cloud complained to the Occupational Safety and Health Administration that she was unsafe, but management "never capitulated to any of her requests and continued their retaliation campaign against [her] for complaining about her lack of personal safety." *Id.* ¶ 27. Management also refused to assist her with customers that were angry when their mail was not ready to be picked up, although they assisted other employees with customer complaints. *Id.* ¶ 28. "Management knew that the general delivery customers would often become further enraged when they were informed they could not speak with someone above [Cloud] in the hierarchal structure about the fact their mail was being delayed, was late and would often be delivered in large accumulated piles after days of receiving no mail at all." *Id.* ¶ 30. Cloud specifically told management that:

> (1) Plaintiff received many threats of violence from customers; (2) a customer dropped a dead bird on the counter in front of Plaintiff to intimidate and threaten her; (3) Plaintiff had objects thrown at her; (4) Plaintiff had visibly mentally disturbed people attempt to climb through her window and; (5) angry customers would scream in Plaintiff's face when a manager or supervisor would not come to the window to resolve their complaints.

*Id.* ¶ 31.

On April 12, 2018, Cloud was assaulted with a deadly weapon by a general delivery customer. *Id.* ¶ 32. She was badly beaten and pulled out through the general delivery window. *Id.* As a result, Cloud suffered massive contusions and bruising, a mild concussion, headaches, back pain and neck pain. *Id.*

## C.     EEO Activities and Retaliation

On May 30, 2018, Cloud participated in the EEO process by filing paperwork that complained of management's lack of an adequate response toward keeping her physically safe, Spencer's harassment of her and tampering with her time sheets; and being forced to work outside of her medical restrictions. *Id.* ¶ 34. She also wrote letters to DePaula and Flores regarding her serious concerns for her bodily safety while working at the general delivery window without

4

protective glass. *Id.* Cloud alleges that DePaula, Flores and Spencer all knew about her participation in the EEO process and that Spencer retaliated by constantly harass her. *Id.* ¶¶ 35-36. On one occasion while Cloud worked the general delivery window, Spencer "was looming over her, watching her every move and yelling aggressively, 'it's your job to give people their mail.'" *Id.* ¶ 37. When Cloud retreated from the window, Spencer chased her and started pointing her finger at her face. *Id.* When Cloud pointed back and stated that she was frightened, Spencer shoved her head backwards with her hand and with one move caused her head to fly back and her entire body to hit the floor. *Id.* ¶¶ 37-38. Once on the ground, Spencer "bit her all over, scratched her face and targeted [her] injured hand. Ms. Spenser pulled of [sic] Plaintiff's wig and kicked her." *Id.* ¶ 38. Cloud states "Spenser is significantly bigger in stature than Plaintiff, who is petite, thin and was recovering from a serious injury to her dominant hand." *Id.* ¶ 39. As a result of the attack, Cloud suffered open bite wounds that became infected and required oral antibiotics and injections. *Id.* ¶ 40. "She has also suffered severe emotional distress and had to take anxiety pills and sleeping pills to address her altered mental state and the marked change in her personality towards fear, sadness and anxiety." *Id.*

After the attack, Cloud was terminated based on USPS's "zero-tolerance" policy for violence. *Id.* ¶ 41. She alleges the reason was pretextual and the real reason she was terminated was because she engaged in EEO activities, refused the sexual advances of her male supervisors and actively participated in the union. *Id.*

**D. Procedural History**

Cloud filed the present complaint on August 9, 2019, asserting two causes of action under Title VII. She asserts a claim for retaliation, alleging she engaged in protected activity by (1) refusing sexual harassment, (2) participating in union activities, (3) reporting safety concerns to management and OSHA, and (4) engaging in the EEO process. *Id.* ¶¶ 43, 45. She asserts Brennan retaliated against her for engaging in these activities by "creating and permitting a hostile work environment, including physical attack and termination." *Id.* ¶ 39.[2] Cloud also asserts a claim for

---

[2] The paragraph numbering in Cloud's complaint is non-sequential. This is the second paragraph numbered 39 but should be 46.

sexual harassment predicated on Mayfield and DePaula's conduct. *Id.* ¶¶ 44, 47.[3]

On December 2, 2019, Brennan filed the present motion to dismiss, arguing most of Cloud's retaliation claim should be dismissed because union activity participation, reporting safety concerns to management and OSHA, and refusing sexual harassment are not "protected activities" under Title VII. Mot. at 2. Even if that conduct were protected activity, Brennan argues Cloud does not state a plausible retaliation claim based on that conduct because she fails to allege when it occurred and therefore cannot establish that any adverse employment action is causally connected to it. *Id.* Brennan also argues that any part of Cloud's retaliation claim that predates her first contact with the EEO office should be dismissed because Cloud cannot be retaliated against for engaging in activities that occurred after the alleged retaliation had already started. *Id.*

Brennan further argues that Cloud's retaliation claim, to the extent it is based on participating in union activities, and the entirety of her sexual harassment claim should be dismissed because she did not raise these allegations during the administrative process and therefore failed to exhaust her administrative remedies with respect to them. *Id.*

Finally, to the extent Cloud seeks to bring a sex discrimination claim that is predicated on any conduct other than the alleged sexual harassment by Mayfield and DePaula, Brennan argues it should be dismissed because the complaint fails to allege the essential elements of a discrimination claim, including that similarly situated individuals outside of Cloud's protected class were treated more favorably than her or that she was subjected to an adverse employment action because of her sex or gender. *Id.*

### III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."

---

[3] These are the second paragraphs numbered 44 and 47 but should be 51 and 54.

*Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. Protected Activity

Brennan first argues most of Cloud's retaliation claim should be dismissed because any part that is premised on union activity participation, reporting safety concerns to management and OSHA, and refusing sexual harassment does not qualify as a "protected activity" under Title VII. Mot. at 6.

Title VII forbids discrimination by employers based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. To state a claim for retaliation, a plaintiff must allege she (1) engaged in a protected activity, (2) her employer subjected her to a materially

adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (citations omitted). An adverse action for a retaliation claim is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations and citations omitted).

### 1.       Union Activity

The Court agrees that union activity is not within the scope of Title VII's protected activity. *See Ting v. Adams & Assocs., Inc.*, 2017 WL 4422508, at *4 (E.D. Cal. Oct. 5, 2017) (dismissing retaliation claim based on plaintiff's union membership, finding Title VII does not protect such membership or activities); *Mitchell v. Superior Ct. of Cal., Cty. of San Mateo*, 2007 WL 1655626, at *17 (N.D. Cal. June 7, 2007), *aff'd in relevant part*, 312 F. App'x 893 (9th Cir. 2009) ("claims of retaliation based on union activity are not within the purview of Title VII, whose scope is specifically delineated in the statute and is the subject of an extensive jurisprudence."); *Levitant v. City of N.Y. Human Res. Admin.*, 625 F. Supp. 2d 85, 106 (E.D.N.Y. 2008) ("Title VII does not provide redress for employees alleging discrimination based on their participation in union activities.") (citing *Mitchell*, 2007 WL 1655626, at *17); *Sesay v. Santa Clara Cty. Valley Med. Ctr.*, 2018 WL 317844, at *4 (N.D. Cal. Jan. 8, 2018), *aff'd sub nom. Osias v. Cty. of Santa Clara*, 731 F. App'x 674 (9th Cir. 2018) ("Plaintiff's attendance at the union meeting is also not a 'protected activity' under Title VII.") (citing *Smith v. Cty. of Santa Clara*, 2016 WL 4076193, at *14 (N.D. Cal. Aug. 1, 2016)).

Cloud appears to argue the Court should not decide whether union activity is protected under Title VII at the pleading stage because it would be more appropriate at the summary judgment stage, based upon a full factual record. Opp'n at 9. However, she fails to provide any authority in support of her argument. Cloud also argues her allegations regarding her union position "should be read in context with [her] allegations regarding her supervisors' retaliation for [her] refusal to capitulate to her supervisors' sexual advances or otherwise participate in the pervasive environment of sexual harassment and discrimination." *Id.* at 10. She maintains her allegations regarding Spencer's "harassment and bullying" over her position with the union must

be read in the context of the "pervasive environment of sexual harassment and discrimination" she faced because Spencer "was rewarded by management because she provided them sexual favors" and was therefore "allowed to use her position of power and authority to harass Plaintiff without consequence, which increased after Plaintiff took a new leadership position with the union." *Id.* at 10, 11. While such allegations may be included for context, caselaw is clear that union activity cannot establish the first element of a Title VII claim. Accordingly, to the extent Cloud bases her retaliation claim on her union activity, the Court **GRANTS** Brennan's motion.

### 2. Reporting Safety Concerns

Courts "have consistently held that an employee who has reported OSHA violations or complained about unsafe working conditions has not engaged in statutorily protected activity." *Langford v. Magnolia Advanced Materials, Inc.*, 2017 WL 5203048, at *15 (N.D. Ga. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 5202889 (N.D. Ga. Feb. 13, 2017), *aff'd*, 709 F. App'x 639 (11th Cir. 2017) (collecting cases); *Washington v. M. Hanna Constr. Inc.*, 299 Fed. App'x 399, 401 (5th Cir. 2008) ("Because Title VII does not encompass violations of OSHA . . . , Plaintiff's alleged reporting of M. Hanna to authorities for violating OSHA does not qualify as protected activity under Title VII . . . .") (citations omitted); *Gurish v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 2012 WL 3649359, at *2 (N.D. Ohio Aug. 23, 2012) (finding that plaintiff could not establish a prima facie case of retaliation because his reports of an unsafe work environment and his "complaint with OSHA for unsafe working conditions" were not protected activity under Title VII); *Rodriguez v. Beechmont Bus Service, Inc.*, 173 F. Supp. 2d 139, 150 (S.D.N.Y. 2001) (dismissing plaintiff's Title VII retaliation claim premised upon his cooperation with an OSHA investigation and his internal complaints of worker safety because "unsafe working conditions are not made unlawful under Title VII"). Thus, while Cloud's allegations about unsafe working conditions and OSHA reporting may be included for context, they do not qualify as "protected activity" under Title VII. Accordingly, to the extent Cloud bases her retaliation claim on reporting safety violations, the Court **GRANTS** Brennan's motion.

### 3. Sexual Harassment

Brennan argues that refusing sexual harassment is not a protected activity because courts

"have declined to recognize rejecting sexual advances as 'protected activity' under Title VII. Mot. at 8. While neither the Supreme Court nor the Ninth Circuit has decided the issue, other circuit courts are split. *See, e.g., LeMarie v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389-90 (5th Cir. 2007) (employee's rejection of supervisor's advances does not constitute protected activity); *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (plaintiff engaged in most "basic form of protected conduct" when she told her supervisor to stop harassing her); *Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir. 2001) (declining to reach the issue of whether "a valid retaliation claim must allege that the employee suffered adverse employment consequences because she lodged or threatened to lodge a complaint about her supervisor, and is insufficient if it alleges "only" that she suffered such consequences because she resisted her supervisor's sexual advances."). In considering this split, Judge Davila in this District held that "rejecting a sexual advance does not amount to protected activity" because the purpose of a reporting requirement "'is a logical one: in order to protect an employee from an employer's retaliation for opposing a practice, the employer must first have been placed on notice of a problematic practice,'" and "'[e]ven the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances. . . . If it were otherwise, every harassment claim would automatically state a retaliation claim as well.'" *Alhozbur v. McHugh*, 2011 WL 13243131, at *8 (N.D. Cal. July 21, 2011) (quoting *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 747-49 (D. Md. 2003); *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 439 (S.D.N.Y. 1996)). "Thus, refusal directed to the alleged harasser, even where the harasser is a supervisor, cannot be equated with notice to the employer." *Id.*

The Court agrees with Judge Davila's reasoning in *Alhozbur* and therefore finds that Cloud cannot state a retaliation claim based on refusing her supervisors' sexual advances. However, it is unclear that her allegations are so limited as she alleges a culture of sexual harassment. Compl. ¶¶ 15-17. "It is unlawful to subject employees to adverse employment actions because they engaged in protected activity, such as complaining of sexual harassment." *Alhozbur*, 2011 WL 13243131, at *6 (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)). Thus, if Cloud can allege that she put her employer on notice by complaining of sexual harassment (i.e., doing more

10

than refusing sexual harassment), she can state a plausible claim for retaliation. Accordingly, to the extent Cloud seeks to bring a retaliation claim based on sexual harassment, the Court **GRANTS** Brennan's motion **WITH LEAVE TO AMEND**.

## B.    Causal Link

Brennan next argues that, even assuming Cloud's activities are protected, her retaliation claim must fail because she does not allege plausible facts establishing retaliation causally connected to her protected activity. Mot. at 9-10. Brennan further argues Cloud cannot plead causation for any retaliatory conduct that predates her contact with the EEO Office. *Id.* at 10-11.

In response, Cloud argues she is not required to plead a prima facie case to survive a motion to dismiss, but even if she were, she argues her "allegations regarding her union activity, OSHA complaint, and refusal of sexual harassment are intimately tied to her allegations regarding her supervisors' campaign of retaliation against Plaintiff for her refusal of their sexual advances and refusal to participate in the pervasive, hostile environment of sexual harassment and discrimination." Opp'n at 13-14. As to whether she has failed to plead causation for any of her supervisors' conduct that occurred prior to her first contact with the EEO in May 2018, Cloud argues Brennan "mistakenly assumes that Plaintiff's only protected activity was when she engaged in the EEO process. Plaintiff alleges a course of conduct that occurred over time, constituting severe and pervasive sexual harassment." *Id.* at 14.

When a plaintiff pleads a plausible prima facie case, the complaint sufficiently states a claim. *Sheppard*, 694 F.3d at 1050 n.2. However, a plaintiff is not required to plead a prima facie case of discrimination or retaliation in order to survive a motion to dismiss. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012); *Lacayo v. Donahoe*, 2015 WL 3866070, at *12 (N.D. Cal. June 22, 2015). When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case "to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015) (citations omitted).

To establish a causal connection between her protected activity and the adverse actions, a

plaintiff may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's "pattern of antagonism following the protected conduct," *Porter v. Cal. Dep't Corr.*, 419 F.3d 885, 895 (9th Cir. 2005), or the temporal proximity of the protected activity and the occurrence of the adverse action. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004); *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003).

Here, the Court finds Cloud has failed to establish a causal connection as to any activity prior to participating in the EEO process. She alleges she "engaged in protected activity by refusing sexual harassment; participating in union activities; reporting safety concerns to management and OSHA and; engaging in the EEO process." Compl. ¶ 45. As discussed above, Cloud's allegations regarding refusing sexual harassment, participating in union activities, and reporting safety concerns to management and OSHA are not protected activities under Title VII. As such, only her allegations regarding the EEO process can be considered protected activity under. To that extent, Cloud alleges "Defendant, its agents, and/or employees retaliated against Plaintiff on the basis of her protected activity, and took material and adverse employment actions against her, including by creating and permitting a hostile work environment, including physical attack, and termination. Defendant failed to take effective remedial action such that the Defendant's action would deter a reasonable employee in the same situation from making a complaint." Compl. ¶ 39.[4] These allegations are sufficient at the pleading stage. *See Fitch v. S.F. Unified Sch. Dist.*, 2015 WL 6551668, at *7 (N.D. Cal. Oct. 29, 2015) ("Plaintiff alleges that "[s]ince [p]laintiff complained of discrimination, she has been and continues to be discriminated against and harassed." At the pleading stage, this alleged temporal proximity is sufficient to state a plausible causal link between her protected activity—filing charges of discrimination with the EEOC and DFEH—and the adverse actions.").

Accordingly, the Court **GRANTS** Brennan's motion as to Cloud's allegations for conduct that occurred prior to the EEO process and **DENIES** the motion as to conduct that occurred after Cloud initiated the EEO process. If Cloud chooses to file an amended complaint that includes a

---

[4] The second paragraph numbered 39.

retaliation claim related to adverse actions prior to the EEO process, she must include allegations of protected activity prior to that process.

### C.   Exhaustion of Administrative Remedies

Brennan next argues Cloud's retaliation claim—to the extent it is based on participating in union activities—and the entirety of her sexual harassment claim should be dismissed because she failed to exhaust her administrative remedies with respect to those claims.  Mot. at 11.

To bring a Title VII claim in district court, a plaintiff must first exhaust her administrative remedies.  42 U.S.C. § 2000e-16(c); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001).  Under the statutory and regulatory scheme, a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct.  *Sommatino*, 255 F.3d at 708 (citing 29 C.F.R. §§ 1614.105, 1614.106).  The Supreme Court recently clarified that Title VII's claim-processing rules, while mandatory, are non-jurisdictional.  *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019).  However, a plaintiff "must allege compliance with the [mandatory processing rule] . . . in order to state a claim on which relief may be granted." *Williams v. Wolf*, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019).

As discussed above, Cloud cannot maintain a retaliation claim based on her participation in union activities.  Accordingly, the Court **GRANTS** Brennan's motion as to that claim.

As to Cloud's sexual harassment claim, Brennan argues it is premised on allegations of harassment by Mayfield and DePaula, which were not at issue in the EEO investigation, and in the only paragraph of the complaint describing the issues referred to the EEO office, Cloud "conspicuously omits reference to sexual harassment."  *Id.* at 14 (citing Compl. ¶ 34).

In order to meet the requirement of substantial compliance with administrative exhaustion, the allegations of a plaintiff's judicial complaint must be "like or reasonably related to the allegations" in an administrative complaint submitted to the EEO, such that they would fall within "the scope of an EEOC investigation which [could] reasonably be expected to grow out of the [administrative] charge of discrimination."  *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citations, quotation marks, and emphasis omitted) (addressing the same standard as applied to a private employee's administrative complaint to the EEOC); *see also Vasquez v. Cty. of Los*

*Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (holding that a court may consider "all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge.").  Courts evaluating the similarity between an administrative complaint and a Title VII claim "may consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" *Vasquez*, 349 F.3d at 644 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)).  "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. "Procedural technicalities should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits." *Ramirez v. Nat'l Distillers & Chem. Corp.*, 586 F.2d 1315, 1321 (9th Cir. 1978) (citing *Love v. Pullman*, 404 U.S. 522 (1972)).

Here, it is not clear from Cloud's complaint whether the EEO process included claims of sexual harassment.  She alleges the "complete disregard for the need to follow these medical restrictions persisted even after an EEO proceeding that found the Post Office was to cease forcing Plaintiff to further injure herself through improper use of her injured hand." Compl. ¶ 22.  She also alleges that she participated in the EEO process "by filing paperwork that complained of management's lack of an adequate response toward keeping her physically safe; Ms. Spenser's harassment of Plaintiff; Plaintiff being worked outside of her medical restrictions and; Ms. Spenser's tampering with Plaintiff's time sheets to remove pay owed." *Id.* ¶ 34.  Later, she alleges she was terminated "because she engaged in EEO activities, refused the sexual advances of her male supervisors and actively participated in the Union." *Id.* ¶ 41.  None of these references establish that complaints of sexual harassment were part of her EEO process.  However, as part of her motion, Brennan attached portions of Cloud's EEO filings, and Cloud cites to them to show the EEO investigation encompassed sex discrimination.  Opp'n at 15 ("In Plaintiff's EEO complaint, Plaintiff included the following succinct description of her supervisors' discriminatory acts: 'Discrimination, harassment based on . . . sex, gender; and retaliation for prior EEO activity

1    ended in results of a physical assault and battery.' (Declaration of Marissa Haley in Support of

2    Defendant's Motion to Dismiss ('Haley Decl.'), Ex. D [ECF No. 11-1].)  Plaintiff's original

3    complaint was enough on its own because she included all of her allegations in summary form.").

4    Cloud also cites to a supplemental affidavit she submitted in connection with the EEO

5    investigation of her complaint, which Brennan also attached as part of her motion.  *Id.*; Haley

6    Decl., Ex. H.

7          Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the

8    Court's consideration of extra-pleading materials is limited and matters outside of the pleading

9    cannot be considered without converting the motion into a motion for summary judgment.  *See*

10   Fed. R. Civ. P. 12(b)(6); 12(d).  Given the early stage of this litigation, the Court declines to

11   convert Brennan's 12(b)(6) motion to a motion for summary judgment.  However, the Ninth

12   Circuit has determined that courts may consider documents alleged in a complaint and essential to

13   a plaintiff's claims.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart*

14   *Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  A court may also "take judicial notice of

15   documents on which allegations in the complaint necessarily rely, even if not expressly referenced

16   in the complaint, provided that the authenticity of those documents is not in dispute."  *Tercica,*

17   *Inc. v. Insmed Inc.*, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (citing *In re Autodesk, Inc.*

18   *Sec. Litig.*, 132 F. Supp. 2d 833, 837-38 (N.D. Cal. 2000)).  Given that both parties rely on

19   Cloud's EEO filings, they are likely essential to her claims here.  Accordingly, the Court takes

20   judicial notice of the official records from the EEO proceeding and notes that Cloud specifically

21   references complaints of sexual harassment in her supplemental affidavit.  Haley Decl., Ex. H at 7,

22   17 ("there was a culture of sexual harassment and consensual sexual and romantic relationships

23   that I refused to partake in"; "the main supervisor ogled me in front of my ex-husband,

24   inappropriately looking at my breasts, in-between my legs and at my buttocks.").  From these

25   documents, the Court finds Cloud can state a claim to relief that is plausible on its face.  *See Ng v.*

26   *Potter*, 2009 WL 3836045, at *2 (W.D. Wash. Nov. 12, 2009) ("Because typical complaints are

27   filled out by non-attorneys, courts construe the EEOC charge with 'utmost liberality,' and it is

28   sufficient that the EEOC is apprised of the alleged discriminatory parties and the alleged

15

discriminatory acts.") (citing *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003)).

Brennan also argues Cloud must plead exhaustion of administrative remedies with specificity, including the dates on which she was sexually harassed. Mot. at 15. However, the only case Brennan cites in support of this argument is *Perkins v. U.S. Navy*, in which the court dismissed the plaintiff's complaint because he completely failed to plead *any* facts indicating that he had administratively exhausted his claims. 2012 WL 2945916, at *2 (S.D. Cal. July 19, 2012). That case is inapplicable here, where Cloud specifically alleges that "[w]ithin forty-five (45) days of the incidents described below, Plaintiff contacted an EEO Counselor." Compl. ¶ 7.

Accordingly, the Court **DENIES** Brennan's motion to dismiss Cloud's second claim for failure to exhaust administrative remedies.

**D.    Sex Discrimination**

Finally, Brennan argues that to the extent Cloud alleges sex discrimination in addition to Mayfield and/or DePaula's alleged sexual harassment, the complaint does not allege all the necessary elements of a prima facie case of discrimination. Mot. at 16. Specifically, she argues Cloud fails to allege that similarly situated individuals outside her protected class were treated more favorably than her. *Id.* Brennan also argues that Spencer "is purportedly responsible for the majority of the conduct alleged in the Complaint, and the Complaint alleges no plausible facts suggesting that Ms. Spencer's conduct was animated by sex or gender." *Id.* at 17.

To establish a prima facie case of discrimination, the plaintiff must show that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000). The fourth element—that the plaintiff was subjected to an adverse employment action because of her membership in a protected class—can be alleged either through direct evidence of discrimination, such as a supervisor's derogatory comment about her race or gender, *see, e.g., E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), or through circumstantial evidence, which may include allegations that similarly situated individuals outside the plaintiff's protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise

to an inference of discrimination, *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). However, as noted above, a plaintiff is not required to plead a prima facie case of discrimination in order to survive a motion to dismiss. *Sheppard*, 694 F.3d at 1050 n.2; *Lacayo*, 2015 WL 3866070, at *12. Instead, courts look to the elements of the prima facie case "to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Achal*, 114 F. Supp. 3d at 796-97.

Here, the Court finds Cloud's allegations are sufficient at this stage in the litigation. She pleads that because she refused to accept the advances of her male supervisors, she "was treated differently than other employees and retaliated against." Compl. ¶ 18. She also pleads that her supervisors "engaged in targeted harassment against Plaintiff because of her sex." *Id.* ¶ 44.[5] Based on these allegations, the Court finds Cloud can state a claim for relief that is plausible on its face. Accordingly, the Court **DENIES** Brennan's motion to dismiss Cloud's second claim for sexual harassment and sex discrimination.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Brennan's motion to dismiss. If Cloud chooses to file an amended complaint, she must do so by February 24, 2020.

**IT IS SO ORDERED.**

Dated: February 3, 2020

THOMAS S. HIXSON
United States Magistrate Judge

---

[5] The second paragraph numbered 44.