UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA T CLOUD,<br><br>    Plaintiff,<br><br>    v.<br><br>LOUIS DEJOY, et al.,<br><br>    Defendants. | Case No. 19-cv-04638-TSH<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 56 |

## I.  INTRODUCTION

Pending before the Court is a Motion for Summary Judgment filed by Defendant Louis DeJoy, Postmaster General of the United States Postal Service.  ECF No. 56.  On August 25, 2022, Cloud filed an Opposition.  ECF No. 62.  On September 8, 2022, Defendant filed a reply.  ECF No. 63.  The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 22, 2022 hearing.  *See* Civ. L. R. 7-1(b).  Having considered the arguments made, the papers submitted in support thereof, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.[1]

## II.  BACKGROUND[2]

**A.    Factual Background**

Erica Cloud was employed by the United States Postal Service and worked Window #12 at the Civic Center Post Office.  ECF No. 62, P's SOF[3] at Nos. 21, 23.  In January 2017, Cloud

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 10, 14.
[2] The following facts are undisputed unless otherwise stated.
[3] This document includes the parties' stipulated statement of material facts, Defendant's statement of material facts, and Plaintiff's responses.

1    injured her hand in a non-work-related accident. *Id*. at No. 1. After her injury, Cloud filed an

2    EEO complaint, and the complaint was resolved on September 7, 2017. *Id*. at No. 2. Cloud was

3    placed on "light duty modified assignment" and remained at Window #12. *Id*. at Nos. 8, 23-25.

4          On May 30, 2018, Yanique Spencer, Cloud's supervisor, saw that it was close to or after

5    Cloud's assigned work hours and asked Cloud why she was still at work. *Id*. at No. 35. The

6    parties disagree over whether Ms. Spencer proceeded to tamper with Cloud's time keeping. *Id*. at

7    No. 36. After May 30, 2018, Cloud contacted the EEO regarding her complaints about Ms.

8    Spencer. *Id*. at No. 7.

9          On August 14, 2018, Ms. Spencer approached Cloud after receiving a customer complaint.

10   *Id*. at No. 37. Cloud states that she told Ms. Spencer that Cloud filed an EEO complaint against

11   Ms. Spencer and, seconds after, Ms. Spencer physically attacked Cloud. ECF No. 62-2, Cloud

12   Decl. at ¶ 10. After the altercation, Ms. Spencer and Cloud were terminated from their positions.

13   P's SOF at Nos. 42-43.

14         Before Cloud's termination, on various occasions before September 7, 2017, Maximo De

15   Paula, Cloud's supervisor, asked Cloud to hug him to say hello, grabbed and patted Cloud, and

16   touched Cloud's hair. ECF No. 62, P's SOF at Nos. 51, 52. In 2018, Mr. De Paula continued to

17   touch Cloud's hair and prevented Cloud from leaving his office. *Id*. at Nos. 52-53.

18   **B.    Procedural Background**

19         On August 9, 2019, Cloud filed the instant action against Megan J. Brennan in her official

20   capacity as Postmaster General of the United States Postal Service. ECF No. 1. On November 20,

21   2020, Cloud filed a Second Amended Complaint ("SAC") against Brennan[4] and DOES 1-10. ECF

22   No. 34. The SAC alleged 1) Retaliation under Title VII, 42 U.S.C. § 2000e and 2) Sexual

23   Harassment and Sex Discrimination under Title VII, 42 U.S.C. § 2000e. *Id*. ¶¶ 42-55. On

24   November 30, 2020, Defendant Louis DeJoy automatically substituted in as the Defendant

25   pursuant to Federal Rule of Civil Procedure 25(d). ECF No. 36 ¶¶ 1-2.

---

[4] Ms. Brennan was "named as defendant in this action pursuant to 28 U.S.C. § 2000e-16(c) and is sued in her official capacity only." ECF No. 34 ¶ 2.

1   On July 28, 2022, Defendant filed a Motion for Summary Judgment. ECF No. 56. On
2   August 25, 2022, Cloud filed an Opposition. ECF No. 62. On September 8, 2022, Defendant
3   filed a Reply. ECF No. 63.

### III. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex.*, 477 U.S. at 317. To carry this burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, it is not the Court's task to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* Thus, the Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate

1  references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d
2  1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party
3  is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations
4  omitted).

### IV. DISCUSSION

Defendant moves for summary judgment on all of Cloud's claims.

**A.  Retaliation Claims**

"Section 704 of Title VII prohibits retaliation against an employee for opposing unlawful discrimination." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). "To establish a prima facie case of retaliation under Title VII, [Cloud] must show 1) that [she] acted to protect [her] Title VII rights; 2) that an adverse employment action was thereafter taken against [her]; and 3) that a causal link existed between the two events." *Id*. If Cloud can establish a prima facie case, then the *McDonnell Douglas* burden-shifting framework applies. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

Defendant argues 1) Cloud did not engage in a protected activity before May 30, 2018, 2) "most" of the alleged retaliatory conduct is not adverse employment action, and 3) Cloud has not established a causal link for her claims. ECF No. 56 at 16-22.

**1.  Protected Activity**

Defendant argues Cloud did not engage in a protected activity before May 30, 2018. ECF No. 56 at 15.

However, Cloud submitted an internal document showing Cloud contacted the EEO on June 28, 2017 regarding a Title VII complaint. ECF No. 62-3, Exh. A (Case Details for 4F-945-0087/Erica Cloud). The Court finds this evidence sufficient to establish Cloud engaged in a protected activity on June 28, 2017. *See Villiarimo,* 281 F.3d at 1064 ("Harvest has demonstrated that he engaged in a protected activity. He testified that he filed an internal complaint regarding Wall's sexually harassing behavior.") (citing *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir.1992) (finding internal complaint to company management was protected

under Title VII and noting that "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint.")).

### 2. Adverse Employment Action

Defendant argues that the alleged retaliatory conduct other than Cloud's termination is not adverse employment action. ECF No. 56 at 16-20. Cloud argues she was required to work outside her medical restrictions, Ms. Spencer tampered with Cloud's timesheets, and Ms. Spencer physically attacked Cloud. ECF No. 62 at 2-4.

The Court finds Plaintiff presented sufficient evidence to demonstrate that the alleged requirement to work outside medical restrictions, tampering with timesheets, and physical attack are adverse employment actions. "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). "This definition includes actions 'materially affect[ing] compensation, terms, conditions, or privileges' of employment." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002). Here, Cloud testified that her request to be transferred because of medical restrictions from Window #12 was denied, she was effectively required to work outside her medical restrictions, Ms. Spencer "clocked" Cloud out of work, and Ms. Spencer physically attacked Cloud. ECF 62-2, Cloud Decl. ¶¶ 3-5, 8, 9, 10. A reasonable juror could find that these actions could reasonably deter Cloud from working or materially affected the terms her employment. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (denials of transfer are adverse employment actions); *Ray,* 217 F.3d at 1243-44 (finding institution of lockdown procedures, elimination of employee programs, and reduced workload to qualify as adverse employment actions); *Chuang v. University of California Davis, Bd. Of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) (finding move of plaintiff's laboratory to qualify as an adverse employment action).

### 3. Causal Connection

Defendant argues Cloud failed to establish a causal connection between a protected activity and adverse action. Cloud only defends her claims involving her termination and Ms. Spencer's physical attack, and argues temporal proximity establishes causation.[5] ECF No. 62 at 5.

In *University of Texas v. Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013), the Supreme Court held that the causation of a retaliation claim requires a plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." "[M]ere temporal proximity between an employer's knowledge of the protected activity and an adverse employment action . . . [is] sufficient evidence of causality to establish a prima facie case" if the temporal proximity is "very close." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001).

The Court finds there is sufficient evidence to support an inference of causation. Cloud presented evidence that, on August 14, 2018, Cloud told Ms. Spencer that she filed an EEO complaint against Ms. Spencer "seconds before" Ms. Spencer attacked her. ECF No. 62-2, Cloud Decl. ¶ 10. Given the close temporal proximity between Plaintiff informing Ms. Spencer of her EEO complaint and Ms. Spencer's physical attack, and Cloud's termination because she engaged in the physical altercation, a reasonable juror could find the evidence supports a causal connection. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (causation can be inferred from "employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."); *Robinson v. Alameda County*, Case No. 12-cv-730-JCS, 2013 WL 4494655, at *22 (N.D. Cal. Aug. 19, 2013) ("Given the totality of her complaints and her supervisor's awareness of her protected activities, Plaintiff has established the causation element of her prima facie case.")

Accordingly, the Court finds Cloud established a prima facie case of retaliation under Title VII as to the August 14, 2018 altercation and Cloud's subsequent termination. The Court

---

[5] Because Cloud failed to argue and establish the causal connection for her retaliation claims involving working outside her medical restrictions and tampered timesheets, the Court finds Plaintiff failed to establish a prima facie retaliation case and **GRANTS** Defendant's Motion for Summary Judgment as to those claims.

1     proceeds to evaluate this claim under the *McDonnell Douglas* burden-shifting framework.  *See*

2     *Villiarimo*, 281 F.3d at 1062.

### 4. *McDonnell Douglas* Burden-Shifting Framework

"If the plaintiff establishes a prima facie case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id*. (citing *McDonnell Douglas*, 411 U.S. 792, 802 (1973)).  If the employer does so, Cloud must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. (internal citations omitted).

Defendant offers the customer complaint and "other things" going on in Ms. Spencer's life as legitimate and nondiscriminatory reasons for the August 14, 2018 altercation.  ECF No. 56 at 23.  Defendant also offers the Postal Service's zero-tolerance policy for workplace violence as the legitimate and nondiscriminatory reason for Cloud's termination.  *Id*.  However, Cloud argues there is a video of the altercation and she acted in self-defense.  ECF No. 62 at 6.  Cloud identifies testimony from Defendant's Rule 30(b)(6) witness indicating that self-defense is an exception to the zero-tolerance policy.  ECF No. 62-3, Exh. F (Rodriguez Transcript) at 49.

The Court finds Cloud's evidence is sufficient to create a genuine issue of material fact over the reasons for the August 14, 2018 altercation and Cloud's termination.  The events surrounding the August 14, 2018 altercation are in dispute and the record does not contain the video evidence of the altercation.  The fact that Cloud told Ms. Spencer about her EEO complaint "seconds before" Ms. Spencer physically attacked Cloud raises genuine disputes over the reason for the altercation.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987) ("Evidence already introduced to establish the prima facie case may be considered, and [i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.") (internal quotations and citations omitted).  Moreover, Cloud's evidence of the self-defense exception raises additional material disputes whether the postal service appropriately terminated Cloud in accordance with its own

1 policies. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006)
2 ("Because Cornwell produced evidence that created a factual question whether his demotion
3 resulted from such discrimination, Defendants were not entitled to summary judgment regarding
4 Cornwell's discrimination claims based on his demotion."); *Miller v. Fairchild Industries, Inc.*,
5 797 F.2d 727, 732-33 (9th Cir. 1986) (Courts have recognized that in discrimination cases, an
6 employer's true motivations are particularly difficult to ascertain . . . thereby making such factual
7 determinations generally unsuitable for disposition at the summary judgment stage.")

8 Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to
9 Cloud's Title VII retaliation claims to the extent the claims involve the August 14, 2018
10 altercation and Cloud's termination.

11 **B.     Sex Discrimination and Sexual Harassment Claims**

12 Title VII prohibits employment discrimination based on sex. *Brooks v. City of San Mateo*,
13 229 F.3d 917, 923 (9th Cir. 2000). "The Supreme Court and the lower courts have interpreted
14 [Title VII] as giving rise to at least three types of sex discrimination claims: disparate treatment
15 (adverse employment actions motivated by sex); quid pro quo sexual harassment (conditioning
16 employment benefits on submission to sexual advances); and hostile work environment
17 harassment (unwelcome sexual advances so severe as to alter the terms and conditions of
18 employment)." *Maner v. Dignity Health*, 9 F.4th 1114, 1120 (9th Cir. 2021); *see also Brooks*, 229
19 F.3d at 922 ("Sexual harassment is a species of gender discrimination: Harassing an employee on
20 account of sex is, conceptually, the same as refusing to hire on account of sex, or paying less for
21 the same work, or imposing more onerous duties for the same pay.").

22 Cloud's sex discrimination claims involve disparate treatment and hostile work
23 environment based on sexual harassment. ECF No. 62 at 6-8. The Court will address the claims
24 accordingly.

25 **1.     Disparate Treatment**

26 "In responding to a summary judgment motion in a Title VII disparate treatment case, a
27 plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason
28 more likely than not motivated the defendant's decision, or alternatively may establish a prima

facie case under the burden-shifting framework set forth in *McDonnell Douglas*." *Dominguez-Curry v. Nevada Trans. Dept.*, 424 F.3d 1027, 1061-62 (9th Cir. 2005).

Defendant argues Cloud cannot establish a prima facie sex discrimination claim under the *McDonnell Douglas* burden-shifting framework. ECF No. 56 at 13-15. Cloud does not address Defendant's arguments regarding the *McDonnell Douglas* burden-shifting framework for her sex discrimination claims, and instead argues she established a prima facie sex discrimination claim because her employer refused to assign Cloud to a different work location and "[m]en were not subjected to sexual harassment by the men in charge." ECF No. 62 at 7.

Notably, Cloud does not cite to any evidence showing that she was treated differently or forced to continue working at Window #12 *because of her gender or sex*. *See Vazquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) ("Vasquez has not offered any direct evidence that Leeds was motivated by discriminatory intent. Nor has Vasquez shown that Leeds' explanation is not believable for some other reason. . . even assuming that Vasquez could establish his prima facie case, his claim would fail because he could not show that Leeds' reason was a pretext for discriminatory intent."); *Frank v. United Airlines, Inc.,* 216 F.3d 845, 853 (9th Cir. 2000) ("Disparate treatment arises when an employer 'treats some people less favorably than others because of their . . . sex.'"). The Court must **GRANT** Defendant's Motion for Summary Judgment as to Cloud's disparate treatment sex discrimination claims.[6]

### 2. Hostile Work Environment

"Title VII of the Civil Rights Act of 1964 prohibits sex discrimination, including sexual harassment, in employment." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). "Sexual harassment falls into two major categories: hostile work environment and quid pro quo . . . . A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Brooks*, 229 F.3d at 922. To survive summary judgment on her hostile work environment claims based on

---

[6] Defendant argues that Cloud's discrimination claims involving conduct that occurred prior to April 15, 2018 are time barred. ECF No. 56 at 1, 25. Because the Court **GRANTS** Defendant's Motion for Summary Judgment as to Cloud's disparate treatment claims, the Court declines to address Defendant's timeliness argument.

9

sexual harassment, Cloud must show that: "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. California Dept. of Corrections*, 419 F.3d 885, 982 (9th Cir. 2005); *accord Stanley v. Trustees of California State University*, 433 F.3d 1129, 1137 (9th Cir. 2006).

Cloud alleges Mr. DePaula's conduct in 2017 and 2018[7] was sexual harassment and created a hostile work environment. ECF No. 62 at 7. Defendant argues a) Cloud admitted that she was not sexually harassed, b) Cloud was not subjected to verbal or physical conduct of a sexual nature, and c) the alleged conduct was not severe or pervasive. ECF No. 56 at 11-12.

### a.   Plaintiff's Testimony

Defendant argues Cloud admitted under oath that she was not sexually harassed. ECF No. 56 at 10; 63 at 4-5. However, Cloud submitted testimony where she stated "I was getting a little frustrated because I'm not knowing sexual harassment is a form – I didn't know it was a form of hugging, touching hair, and doings things like that. I don't know what all the term 'sexual harassment' is." ECF No. 62-6, Exh. G (Cloud Decl.) at 207: 7-11. Given the conflicting testimony, the Court **DENIES** Defendant's request for grant summary judgment because of Cloud's testimony. *See Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) ("[T]he district court must recognize that, where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'"); *Porter v. California Dep't of Corrections*, 419 F.3d 885, 891 (9th Cir. 2005) ("At the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."); *Leslie v. Group ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) ("[A]t summary judgment . . . if direct evidence produced by the moving party conflicts with direct evidence

---

[7] Defendant does not appear to dispute the timeliness of Plaintiff's hostile work environment claims. ECF No. 63 at 6. The Court shall evaluate alleged sexual harassment from 2017 to 2018 because "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 101 (2002).

1  produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the
2  nonmoving party with respect to that fact.").

### b. Conduct of a Sexual Nature

Defendant argues that "almost none" of the alleged conduct, including closed-door meetings, hair touching, and hugs, is of a sexual nature. ECF No. 56 at 11-12.

The Court disagrees with Defendant. Cloud testified that between 2017 and 2018, Mr. De Paula "put his foot up and had [Plaintiff] blocked," requested Cloud to hug him, "fondle[d]" Cloud's hair, complimented Cloud's appearance, "pat[ted] [Cloud] on the back." ECF No. 62-3, Exh. G (Cloud Depo) at 136: 3-34, 207: 18-22, 23-25, 208: 1-2, 211:17-20, 212: 1-7, 23-25. The Court finds this evidence sufficient to raise a genuine dispute over whether Cloud was subjected to conduct of a sexual nature. *See Zetwick*, 850 F.3d 436, 442 (9th Cir. 2017) ("[A] reasonable juror could conclude that the differences in hugging of men and women were not, as the defendants argue, just 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.'") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *Burrell v. Star Nursery, Inc.,* 170 F.3d 951, 953-55 (9th Cir. 1999) (finding material issue of fact where plaintiff alleged coworkers made unwanted sexual advances and made comments about her breasts, grabbed plaintiff's breasts once, and asked to go on a trip).

### c. Severe or Pervasive Conduct

Defendant argues Cloud cannot establish severe or pervasive conduct. ECF No. 56 at 12; 63 at 6.

In considering whether conduct is severe or pervasive, the Court must "consider the totality of the circumstances and whether the harassment was both objectively and subjectively abusive." *Freitag v. Ayers,* 468 F.3d 528, 539 (9th Cir. 2006) (citing *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 966 (9th Cir. 2002)). This includes consideration of the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters., Inc.,* 256 F.3d 864, 872 (9th Cir. 2001). However, "the harassment need not be so severe as to cause diagnosed psychological

11

injury." *Fuller v. Idaho Dept. of Corrections*, 865 F.3d 1154, 1162 (9th Cir. 2017). "[I]n evaluating the severity and pervasiveness of sexual harassment, [the Court] focus[es] on the perspective of the victim." *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir. 1991).

The Court finds Cloud has offered sufficient evidence to establish a prima facie case of hostile work environment. As discussed above, Cloud testified that, between 2017 and 2018, Mr. De Paula blocked Cloud's path with his foot, prevented Cloud from leaving his office, requested hugs, fondled Cloud's hair, and patted Cloud. ECF No. 62-3, Exh. G (Cloud Decl.) at 136: 3-34, 207: 18-22, 23-25, 208: 1-2, 211:17-20, 212: 1-7, 23-25. *See Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991) ("Well-intentioned compliments by co-workers or supervisors can form the basis of a sexual harassment cause of action if a reasonable victim of the same sex as the plaintiff would consider the comments sufficiently severe or pervasive to alter a condition of employment and create an abusive working environment."); *Medina v. Monahoe*, 854 F. Supp. 2d 733, 740, 750 (N.D. Cal. 2012) (finding plaintiff established prima facie case of hostile work environment based on sexual harassment against a supervisor who touched plaintiff's hair, caressed plaintiff's shoulders, and commented on how well plaintiff fitted her pants."). Mr. De Paula's position as Cloud's supervisor "made his actions emotionally and psychologically threatening." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1056 (9th Cir. 2007). Moreover, Cloud testified that she "felt a certain way" when Mr. De Paula would touch her because she knew that he was previously accused of sexual harassment. ECF No. 62-3, Exhibit G (Cloud Decl.) at 140:12-15; 208: 2-4; 212: 23-24, 213: 1. *See Heyne v. Caruso*, 69 F.3d 1475, 1479–81 (9th Cir. 1995) ("[The sexual harassment of others, if shown to have occurred, is relevant and probative of [a defendant's] general attitude of disrespect toward his female employees, and his sexual objectification of them.").

Given the cumulative effect of the alleged harassment, and in viewing the evidence most favorable to Cloud, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment sexual harassment claims to the extent the claims are based

12

on Mr. De Paula's alleged misconduct.[8]  *Cf. Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008) ("In close cases such as this one, where the severity of frequent abuse is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment.").

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: September 19, 2022

THOMAS S. HIXSON
United States Magistrate Judge

---

[8] Defendant moves for summary judgment on Plaintiff's sexual harassment claims arising out of Mr. Mayfield's conduct. ECF No. 56 at 12. Plaintiff fails to raise any evidence or argument supporting her sexual harassment claim arising out of Mr. Mayfield's conduct. ECF No. 62. The Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's sexual harassment claims to the extent Plaintiff's claims are based on Mr. Mayfield's alleged conduct.

13